**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.: 14-cv-00144-MSK-KLM**

STANLEY LIEBLEIN, Derivatively on Behalf of THE WESTERN UNION COMPANY,

               Plaintiff,

     v.

HIKMET ERSEK,
SCOTT T. SCHEIRMAN,
JACK M. GREENBERG,
DINYAR S. DEVITRE,
RICHARD A. GOODMAN,
BETSY D. HOLDEN,
LINDA FAYNE LEVINSON,
ROBERTO G. MENDOZA,
MICHAEL A. MILES, Jr.,
WULF von SCHIMMELMANN, and
SOLOMON D. TRUJILLO,

               Defendants,

and

THE WESTERN UNION COMPANY, a Delaware Corporation,

               Nominal Defendant.

---

**MOTION TO CONSOLIDATE, APPOINT MARTA/ATU LOCAL 732 EMPLOYEES
RETIREMENT PLAN AS LEAD PLAINTIFF, AND APPOINT JOHNSON & WEAVER,
LLP AS LEAD COUNSEL FOR PLAINTIFFS; MEMORANDUM OF LAW**

---

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................... 3

     A.   Background ...................................................................................... 3

     B.   Procedural History And Johnson & Weaver's Efforts To Coordinate
          Among Plaintiffs' Counsel .......................................................... 5

III. THE MARTA/ATU ACTION AND THE RELATED ACTIONS SHOULD BE
     CONSOLIDATED ..................................................................................... 9

IV.  MARTA/ATU SHOULD BE APPOINTED LEAD PLAINTIFF AND
     JOHNSON & WEAVER SHOULD BE APPOINTED LEAD COUNSEL ............... 9

     A.   Establishing A Leadership Structure In This Action Is Within The
          Court's Discretion And Is Appropriate Here ............................................. 10

     B.   All Relevant Factors Support Appointing MARTA/ATU To Be Lead
          Plaintiff And Johnson & Weaver To Be Lead Counsel For Plaintiffs ........ 11

          1.   The Quality Of Johnson & Weaver's Pleadings Supports
               Appointing The Firm To Be Lead Counsel For Plaintiffs ............... 11

          2.   MARTA/ATU Is An Institutional Investor Which Holds The
               Largest Number Of Shares Among Qualified Plaintiffs And
               Has The Resources And Commitment To Vigorously Litigate
               This Action On Western Union's Behalf ........................................ 13

          3.   Johnson & Weaver Has Vigorously Litigated This Action.............. 15

          4.   Johnson & Weaver Is Highly Capable And Qualified To Lead
               This Litigation ................................................................................ 16

          5.   Johnson & Weaver Has Attempted To Work Cooperatively
               With Other Counsel ....................................................................... 20

V.   CONCLUSION.................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

*Bauchman v. West High Sch.*, 132 F.3d 542 (10th Cir. 1997)......................................... 13

*Brooks v. Gaenzle*, 614 F.3d 1213 (10th Cir. 2010) ...................................................... 13

*Clark v. Thiry*, 2014 U.S. Dist. LEXIS 1981 (D. Colo. Jan. 7, 2014) ............ 10, 11, 13, 14

*Hacker v. Peterschmidt*, 2006 U.S. Dist. LEXIS 77325 (N.D. Cal. Oct. 11,
    2006) ..................................................................................................................... 10

*Horn v. Raines*, 227 F.R.D. 1 (D.D.C. 2005) .................................................................. 10

*MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958) ....................................................... 10

*Marquez v. Harvest Standard, LLC*, 2011 U.S. Dist. LEXIS 49436 (D. Colo.
    May 9, 2011)........................................................................................................... 13

*Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar.
    4, 2013) ............................................................................................................ 11, 22

*Richey v. Ells*, 2013 U.S. Dist. LEXIS 7193 (D. Colo. Jan. 17, 2013)............................ 11

*Sexton v. Van Stolk*, 2008 U.S. Dist. LEXIS 32986 (W.D. Wash. Apr. 10,
    2008) ..................................................................................................................... 21

*Skaggs v. Level 3 Communs., Inc.*, 2009 U.S. Dist. LEXIS 14226 (D. Colo.
    Feb. 24, 2009) ......................................................................................................... 9

*Sparano v. Lief*, 2011 U.S. Dist. LEXIS 21144 (S.D. Cal. Mar. 3, 2011) ...................... 10

**OTHER AUTHORITIES**

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:
    Federal Rules of Civil Procedure* (2006).............................................................. 10

*Manual for Complex Litigation* (4th ed. 2004)................................................. 10, 11, 22

**RULES**

Fed. R. Civ. P. 42 ............................................................................................................. 9

## MOTION

**PLEASE TAKE NOTICE** that plaintiff MARTA/ATU Local 732 Employees Retirement Plan ("MARTA/ATU" or "Plaintiff"), named derivative plaintiff on behalf of The Western Union Company ("Western Union" or the "Company") in *MARTA/ATU Local 732 Employees Retirement Plan v. Hikmet Ersek et al.*, Case No. 14-cv-00708, hereby moves the Court for an order: (1) consolidating Case No. 14-cv-00708 with this action and other, related derivative actions, including *Lieblein v. Ersek et al.*, Case No. 14-cv-00144-MSK-KLM, *Klein v. Ersek et al.*, Case No. 14-cv-00385-MJW, *The City of Cambridge Retirement System v. Devitre et al.*, Case No. 14-cv-00451-MEH, *Mayar Fund Ltd v. Ersek et al.*, Case No. 14-cv-00599-MSK-MEH, and *Louisiana Municipal Police Employees' Retirement System v. Devitre et al.*, Case No. 14-cv-00641-LTB-BNB (the "Related Actions"); (2) appointing MARTA/ATU as lead plaintiff in the consolidated action; and (3) appointing Johnson & Weaver, LLP as lead counsel for plaintiffs in the consolidated action.

The Motion is based on this Motion and the Memorandum of Law (below), the Declarations of Frank J. Johnson (and the exhibits attached thereto), Curtis Howard, Gordon Hutchinson, and Stanley Lieblein submitted herewith, the [Proposed] Order submitted herewith, the complete files and records in these actions, and such oral argument as the Court may consider in deciding this Motion.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

MARTA/ATU, a sophisticated institutional plaintiff with the time and experience to prosecute this matter, should be appointed lead plaintiff to oversee a vigorous prosecution of this case.   MARTA/ATU should be appointed as lead plaintiff for a

number of reasons.  **First**, MARTA/ATU is a sophisticated institutional investor with experience overseeing and giving direction to lawyers in securities fraud related lawsuits.  **Second**, MARTA/ATU is a longtime Western Union shareholder and has a significant financial stake in Western Union.   Specifically, MARTA/ATU has held a significant position in Western Union since September 2009 and still owns 36,333 shares.   **Third**, MARTA/ATU is not currently involved in similar litigation and, as confirmed by the Co-Chairmen of its board of directors, is committed to providing the necessary resources and attention to zealously pursue this action.  **Fourth**, to ensure that MARTA/ATU will continue to have standing to pursue these claims, MARTA/ATU is committed to holding shares of Western Union throughout the duration of this litigation.

Further, Johnson & Weaver, LLP should be appointed as lead counsel for plaintiffs for several reasons.  **First**, Johnson & Weaver's pleadings resulted from a detailed and thorough investigation and are superior to other complaints in the Related Actions.  **Second**, Johnson & Weaver has vigorously prosecuted this action on Western Union's behalf by: (a) immediately securing waivers of service from all but one individual defendant; (b) drafting and negotiating a motion to consolidate the derivative cases and set a timeline for further proceedings; and (c) taking the lead to discuss global issues among all counsel in an attempt to coordinate a leadership structure among plaintiffs' counsel.  **Third**, Johnson & Weaver is exceptionally qualified to serve as lead counsel. **Fourth**, Johnson & Weaver has demonstrated throughout these proceedings its willingness and ability to work cooperatively with all counsel, and has attempted to work cooperatively with other plaintiffs' counsel to reach agreement on a leadership structure for further proceedings.

## II.    STATEMENT OF FACTS

### A.    Background

The MARTA/ATU action and Related Actions seek to hold certain Western Union officers and directors accountable for their misconduct surrounding Western Union's money transfer business over the U.S. and Mexico border.

In February 2010, Western Union entered into a settlement agreement with the state of Arizona ("the Arizona Settlement Agreement").   ¶¶ 4, 48.[1]   The Arizona Settlement Agreement came after a decade-plus of investigations and litigation over Western Union's inability or refusal to take steps to prevent its consumer-to-consumer ("C2C") money transfer services from being used to facilitate money laundering, human trafficking, drug trafficking, and other crimes through money transfers between Arizona and Mexico or other Latin American countries.   ¶¶ 4, 46-48.   Western Union touted that the Arizona Settlement Agreement resolved all outstanding legal issues and downplayed what the agreement required, disclosing only that the company had agreed to make changes to its compliance program along the U.S. and Mexico border and to engage a program monitor, which would cost the company "up to $23 million" through 2013.  ¶¶ 5, 48-49.

Thereafter, over the next two years, Western Union reported steadily positive trends and growing revenues from its Mexico and Latin America C2C business, touted how these trends and revenue growth would continue, and championed the company's anti-money laundering expertise as a "strength" and "competitive advantage."  But

---

[1] Unless otherwise indicated, all paragraph cites are to the MARTA/ATU complaint filed in Case No. 14-cv-00708.

Western Union failed to disclose that, given the Company's likely obligations under the Arizona Settlement Agreement and the discretion the monitor appointed under that agreement had to mandate substantial and material changes to Western Union's business, the positive trends were unlikely to continue and would likely soon reverse. ¶¶ 6-7, 50-98.  As a result, Western Union's stock traded at highly inflated prices from April 2010 to October 2012.  Over this period, the Board authorized the repurchase of over $1.5 billion of Company stock to artificially inflate the stock price while the Company's CFO (now former CFO) offloaded over $8 million of dollars of his own stock. ¶¶ 13-14, 146-152.

In October 2012, however, the Company's stock plummeted 29% when the Company lowered its 2012 EPS outlook and affirmed that compliance costs under the Arizona Settlement Agreement would likely exceed $23 million, revenues from its Mexico and Latin America C2C business had plummeted, and that the Company had ended relationships with over 7,000 agents in Mexico who did not meet new compliance requirements.  ¶¶ 10,129-131.

Western Union has since disclosed that the cost of compliance has far exceeded $23 million.  The Company has also been on the brink of breaching the Arizona Settlement Agreement and has had to secure numerous extensions/amendments to meet its obligations.  The Company is now a defendant in a number of securities class actions and may have to pay tens if not hundreds of millions of dollars in costs and any judgment.  Moreover, the Company's efforts to comply with the Arizona Settlement Agreement are still ongoing (and the uncertainty surrounding the Company's Mexico and Latin America C2C business persists).  ¶¶ 11, 132-140.

Indeed, on February 3, 2014, Western Union announced that it and the state of Arizona had entered into an amendment to the Arizona Settlement Agreement, which (a) extends the term of the Arizona Settlement Agreement out until December 31, 2017 (over four years beyond the initial term); (b) imposes increased obligations on the Company in connection with its compliance and regulatory programs along the U.S. and Mexico border; (c) requires the Company to continue its efforts to implement myriad changes already recommended by the monitor overseeing the Company's compliance efforts; (d) extends the period of the monitor's oversight and allows the monitor to make additional compliance recommendations; and (e) creates a series of remedies that the state of Arizona can pursue if the Company fails to meet its obligations, which could include civil or criminal actions against Western Union, or the Company having to pay tens-of-millions of dollars, or more, in penalties and fines.  Further, the Company reported, the changes imposed by the Arizona Settlement Agreement and the new changes imposed by the amendment had materially and adversely affected and would continue to materially and adversely affect the Company's business.  ¶¶ 12, 141-145.

**B.    Procedural History And Johnson & Weaver's Efforts To Coordinate Among Plaintiffs' Counsel**

After being retained by a sophisticated individual shareholder to evaluate whether members of the board of directors breached their fiduciary duties to the Company, Johnson & Weaver first analyzed the related securities class action and then conducted a thorough legal and factual investigation into the actions each board member took to fulfill its duties to the Company.  No other derivative action had been filed.  After its investigation and further consultation with its client, Johnson & Weaver

set out to vigorously pursue a derivative action for the benefit of the Company and its shareholders.

On January 19, 2014, Johnson & Weaver filed the first derivative action captioned *Lieblein v. Ersek et al.*, Case No. 14-cv-00144-REB-KLM.   Johnson & Weaver wasted no time to pursue these claims.   Over the next couple of days, Johnson & Weaver: (i) filed a notice of related cases; (ii) conversed with counsel for defendants about the case and service of defendants; (iii) prepared waivers of service of process for each defendant and sent them to defendants' counsel; and (iv) secured signed waivers of service from all but one individual defendant (who resides in Germany; Johnson & Weaver's efforts to secure a waiver of service for Schimmelmann have been continuous and are ongoing).   Declaration of Frank Johnson in Support of Motion to Consolidate, Appoint MARTA/ATU Local 732 Employees Retirement Plan as Lead Plaintiff, and Appoint Johnson & Weaver, LLP as Lead Counsel for Plaintiffs ("Johnson Decl."), ¶¶ 3-4.

Johnson & Weaver's actions for the benefit of the Company did not go unnoticed by other law firms.   In the first week of February 2014, Bottini & Bottini, Inc., another law firm representing another Western Union shareholder, contacted Johnson & Weaver to discuss the case, a proposed schedule, and amendments that might be appropriate to improve the case.   Thereafter, on February 11, 2014, Bottini & Bottini, Inc. filed the second of the Related Actions, captioned *Klein v. Ersek et al.*, Case No. 14-cv-00385-MJW.   Johnson & Weaver and Bottini & Bottini, Inc. prepared a stipulated motion to consolidate the two actions and set forth a schedule pursuant to which they would file

an amended complaint. They then presented the stipulated motion to defendants. Johnson Decl., ¶ 5.

Thereafter, Johnson & Weaver and defense counsel continued discussions concerning the proposed stipulation, a related action filed in state court, and global case scheduling issues. Johnson Decl., ¶ 6. Those discussions were ongoing when, on February 20, 2014, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") filed another related complaint, captioned *City of Cambridge Retirement System v. Devitre et al.*, Case No. 14-cv-00451-MEH. Johnson Decl., ¶ 7. Notably, before filing their action, Bernstein Litowitz made no effort to contact Johnson & Weaver to discuss the litigation or ways that Bernstein Litowitz believed the first-filed complaints could be amended or supplemented to improve on the factual allegations or claims. Even though the *Lieblein* action had been on file for over a month, and Bernstein Litowitz clearly had the benefit of reviewing the complaint as evidenced by similar allegations in their own complaint, Bernstein Litowitz did not want to work together. It just filed its own complaint.

Nonetheless, shortly after learning of the *City of Cambridge Retirement System* action, Johnson & Weaver reached out to Bernstein Litowitz to discuss the ongoing efforts to consolidate the earlier actions, the discussions to work with Bottini & Bottini, and to discuss the opportunity for Johnson & Weaver and Bernstein Litowitz to also work together as co-lead counsel for plaintiffs. Bernstein Litowitz, however, would only discuss a leadership structure that appointed Bernstein Litowitz as sole lead counsel for plaintiffs. Johnson Decl., ¶ 8.

After plaintiffs' counsel could not immediately agree on a leadership structure, Johnson & Weaver was mindful of the discussions it was having with defendants and the fact that responses to the first complaint would be due shortly.  To accommodate defendants' desire to not have to respond to multiple complaints, Johnson & Weaver prepared and sent to all parties a revised, draft motion, which proposed to consolidate the multiple actions, relieve defendants' of the need to respond to multiple complaints, and set a further schedule for plaintiffs to either reach agreement on a leadership structure or submit motions to the Court.  Johnson Decl., ¶ 9, Exhibit A.

About the same time, Bernstein Litowitz informed Johnson & Weaver that another law firm was filing a related case and had already decided to support Bernstein Litowitz in its effort to be sole lead counsel to the exclusion of all others.  As forewarned, on February 26, 2014, Kahn, Swick & Foti filed *Mayar Fund Ltd v. Ersek et al.,* Case No. 14-cv-00599-MSK-MEH.  Despite being told that Kahn, Swick & Foti had already made their deal, Johnson & Weaver still contacted that firm (with which it is co-lead on two other securities cases) to see if it was willing to work together in a cooperative fashion.  On February 28, 2014, Bernstein Litowitz filed another case, captioned *Louisiana Municipal Police Employees' Retirement System v. Devitre et al.*, Case No. 14-cv-00641-LTB-BNB.  Johnson Decl., ¶¶ 10-11.

On March 4, 2014, after securing the input and approval of all plaintiffs' counsel and defense counsel, Johnson & Weaver filed an unopposed motion to consolidate the Related Actions.  Johnson Decl., ¶ 13.  On March 5, 2014, this action was transferred to this Court.

In the week of March 7, 2014, MARTA/ATU, a sophisticated institution holding 36,333 shares of Western Union, retained Johnson & Weaver and expressed an interest to lead the vigorous prosecution of this action.  On March 7, 2014, Johnson & Weaver filed MARTA/ATU's complaint on behalf of Western Union.   Johnson Decl., ¶ 17.

## III.   THE MARTA/ATU ACTION AND THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Under Fed. R. Civ. P. 42(a), when actions involve "a common question of law or fact," the Court may "join for hearing or trial any or all matters at issue in the actions; consolidate the actions;" and "issue any other orders to avoid unnecessary cost or delay."  Rule 42(a) gives the Court "broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties."  *Skaggs v. Level 3 Communs., Inc.*, 2009 U.S. Dist. LEXIS 14226, at *3 (D. Colo. Feb. 24, 2009).

Here, the MARTA/ATU action challenges similar alleged misconduct by Western Union's directors and officers and involves common questions of law and fact to the allegations and claims in the Related Actions.   Accordingly, consolidation of the MARTA/ATU action with the Related Actions is appropriate.

## IV.   MARTA/ATU SHOULD BE APPOINTED LEAD PLAINTIFF AND JOHNSON & WEAVER SHOULD BE APPOINTED LEAD COUNSEL

Appointment of MARTA/ATU as lead plaintiff and Johnson & Weaver as lead counsel for plaintiffs will ensure that plaintiffs' interests are properly represented and that the litigation has a leadership structure in place to move the litigation forward in a diligent and efficient manner.

### A. Establishing A Leadership Structure In This Action Is Within The Court's Discretion And Is Appropriate Here

The court may appoint a leadership structure to coordinate the prosecution of complex litigation. "The decision regarding appointment of [Lead Plaintiff] and Lead Counsel is within the discretion of the Court. The principle that guides the Court's decision is which counsel will best serve the interest of the [class of] plaintiffs." *Clark v. Thiry*, 2014 U.S. Dist. LEXIS 1981, at *6 (D. Colo. Jan. 7, 2014) (quoting *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005)). *See also, e.g., Hacker v. Peterschmidt*, 2006 U.S. Dist. LEXIS 77325, at *6 (N.D. Cal. Oct. 11, 2006) ("Upon consolidation, pursuant to Rule 42(a), the district court, 'if it sees fit, may appoint one or more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated cases and accordingly assign the designated lawyers specific responsibilities.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Federal Rules of Civil Procedure* §2385 (2006)).

Further, "[t]he benefits achieved by consolidation and the appointment of general counsel, i.e., elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.'" *Sparano v. Lief*, 2011 U.S. Dist. LEXIS 21144, at *6 (S.D. Cal. Mar. 3, 2011) (quoting *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958)); *see also Manual for Complex Litigation ("Manual")* §10.22 (4th ed. 2004) ("Instituting special procedures for coordination of counsel early in the litigation will help to avoid" problems, including: waste of time and resources, confusion and misdirection of the litigation, and burden on the court.).

The Court should exercise its discretion here to appoint both a lead plaintiff and lead counsel for plaintiffs.

**B.    All Relevant Factors Support Appointing MARTA/ATU To Be Lead Plaintiff And Johnson & Weaver To Be Lead Counsel For Plaintiffs**

In *Clark*, the court identified the following factors as relevant to determining a leadership structure in a shareholder derivative action:

> (1) [T]he quality of the pleadings; (2) the size of the plaintiff's financial stake; (3) whether the plaintiff is an individual or institutional plaintiff; (4) the vigorousness of the prosecution of the lawsuits; and (5) the capabilities of counsel.

2014 U.S. Dist. LEXIS 1981, at *6.   *See also Richey v. Ells*, 2013 U.S. Dist. LEXIS 7193, at *5 (D. Colo. Jan. 17, 2013) (identifying quality of pleadings, vigorousness of prosecution, and capabilities of counsel as factors governing appointment of lead plaintiff/plaintiffs' counsel in a derivative action).

In addition to the factors above, other authorities give credence to the idiom "actions speak louder than words" and place importance on counsel's conduct demonstrating a willingness to work cooperatively with others.  "[T]he attorneys' ability to … work cooperatively with opposing counsel and the court" is an important factor in selecting lead counsel.  *Manual* §10.224; *see also Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *25-26 (N.D. Cal. Mar. 4, 2013) (same).

Each of these factors strongly weigh in favor of appointing MARTA/ATU as lead plaintiff and Johnson & Weaver as lead counsel for plaintiffs.

**1.    The Quality Of Johnson & Weaver's Pleadings Supports Appointing The Firm To Be Lead Counsel For Plaintiffs**

Johnson & Weaver's high quality pleadings support appointment of Johnson & Weaver as lead counsel.

Before filing his complaint, Mr. Lieblein, with the assistance of Johnson & Weaver, conducted a diligent investigation into defendants' wrongdoing. *See Declaration of Stanley Lieblein in Support of Motion to Consolidate, Appoint MARTA/ATU Local 732 Employees Retirement Plan as Lead Plaintiff, and Appoint Johnson & Weaver, LLP as Lead Counsel for Plaintiffs (Lieblein Decl.), ¶ 4.*[2]   This thorough investigation produced a comprehensive, fact-specific complaint.   Johnson Decl., ¶¶ 2-3.   Further, since filing the initial complaint, Johnson & Weaver's investigation has continued, and the additional results of this continued investigation are reflected in the *MARTA/ATU* complaint, which includes additional allegations based on developments that occurred after the *Lieblein* complaint was filed.   Johnson Decl., ¶¶ 15-16.

As a result, Johnson & Weaver's pleadings are superior to the complaints filed by other plaintiffs. For example, *MARTA/ATU's* complaint includes (and the *Lieblein* complaint included) claims for: (1) misappropriation of information and insider trading against the Company's former CFO, Scott T. Scheirman, and (2) corporate waste against the director defendants.  Neither of these claims is either factually developed or pled at all in either the *City of Cambridge Retirement System* or the *LAMPERS* complaint.

Also, the *MARTA/ATU* complaint includes well-pled allegations establishing diversity jurisdiction over the state law claims pled in that complaint as an alternative basis for the Court to exercise jurisdiction over those claims.  In contrast, while City of

---

[2] Mr. Lieblein also supports the appointment of MARTA/ATU as lead plaintiff and Johnson & Weaver as lead plaintiffs' counsel.  Lieblein Decl., ¶ 5.

Cambridge Retirement System also pleads diversity jurisdiction, its allegations are not well-pled.  City of Cambridge Retirement System is a "citizen" of Massachusetts for diversity purposes.  While City of Cambridge Retirement System alleges that defendant Michael A. Miles, Jr. is a citizen of Florida, Mr. Miles is a citizen of Massachusetts. Johnson Decl., ¶ 16.  City of Cambridge Retirement System therefore likely cannot adequately plead diversity jurisdiction.  The failure to adequately allege diversity could present problems for the successful prosecution of this matter because if the federal claims asserted by City of Cambridge Retirement System are dismissed, courts in this district generally do not continue to exercise discretionary supplemental jurisdiction over any remaining claims based on state law.  *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) ("'If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)) (citations omitted); *see also Marquez v. Harvest Standard, LLC*, 2011 U.S. Dist. LEXIS 49436, at *2-3 (D. Colo. May 9, 2011) (same).[3]

**2.      MARTA/ATU Is An Institutional Investor Which Holds The Largest Number Of Shares Among Qualified Plaintiffs And Has The Resources And Commitment To Vigorously Litigate This Action On Western Union's Behalf**

Applying the second and third factors identified in *Clark*, 2014 U.S. Dist. LEXIS 1981, at *6, (the size of the plaintiff's financial stake and whether plaintiff is an

---

[3] LAMPERS, the only other plaintiff to plead diversity jurisdiction, makes the same incorrect allegation that Mr. Miles is a citizen of Florida.  While LAMPERS could presumably correct its complaint to still plead diversity, for the additional reasons discussed herein, LAMPERS is not qualified to serve as lead plaintiff.

institutional or individual investor), MARTA/ATU is the most qualified among plaintiffs to serve as lead plaintiff because it is an institutional investor which holds the largest financial stake among qualified plaintiffs.

MARTA/ATU is a long-time Western Union shareholder, having continuously held shares since at least September 30, 2009 (including throughout the entire relevant period of alleged wrongdoing in this action). *See* Declaration of Curtis Howard in Support of MARTA/ATU's Motion to Consolidate, Appoint MARTA/ATU Local 732 Employees Retirement Plan as Lead Plaintiff, and Appoint Johnson & Weaver, LLP as Lead Counsel for Plaintiffs ("Howard Decl."), ¶ 3; Declaration of Gordon Hutchinson in Support of MARTA/ATU's Motion to Consolidate, Appoint MARTA/ATU Local 732 Employees Retirement Plan as Lead Plaintiff, and Appoint Johnson & Weaver, LLP as Lead Counsel for Plaintiffs ("Hutchinson Decl."), ¶ 3.   MARTA/ATU is a government retirement plan formed and existing under the laws of the state of Georgia.   The Plan provides retirement benefits to active and retired MARTA employees who are covered by a labor agreement between MARTA and ATU Local 732 in Atlanta, Georgia.   Howard Decl., ¶ 2; Hutchinson Decl., ¶ 2.

MARTA/ATU fully understands its role and expectations if appointed lead plaintiff.   Also, MARTA/ATU is not currently serving as lead plaintiff in any similar litigation, and thus is well-positioned and committed to devoting the necessary time and attention to vigorously prosecute this action.   Howard Decl., ¶ 5; Hutchinson Decl., ¶ 5.

Additionally, MARTA/ATU currently holds 36,333 shares of Western Union Stock – much larger than the holdings disclosed by all but one plaintiff.[4] The lone exception is LAMPERS, which claims it currently owns 45,192 shares.  But LAMPERS is a serial institutional plaintiff that is ill-equipped to devote the time, attention, and leadership that this case deserves from a lead plaintiff.  Indeed, as reported in a recent (October 17, 2013) *Fortune* article, LAMPERS "has become a litigation machine."  Johnson Decl., Exhibit B, at p.140.  For example, *Fortune* reports, "[i]n a 10-day period in February [2013] . . . the fund sued Dell, US Airways, Hewlett-Packard, Heinz, and EnergySolutions."  *Id.*  And, *Fortune* reports, during an interview with *Fortune*, the attorney paid by LAMPERS to manage LAMPERS' involvement in securities litigation admitted that, because LAMPERS is spread so thin, he "couldn't say how many cases the fund had going, how many firms represented the fund, or how much the fund had recovered from cases."  *Id.* at p.146.  LAMPERS' contribution to the prosecution of this action must be discounted accordingly.

Thus, MARTA/ATU is the largest institutional shareholder that is genuinely positioned to fully discharge its duties and responsibilities as a lead plaintiff.

### 3.     Johnson & Weaver Has Vigorously Litigated This Action

Johnson & Weaver is equally dedicated to actively litigating this action on Western Union's behalf, and has the resources and team to do so.

---

[4] According to the verification to its complaint, City of Cambridge Retirement System currently owns 12,660 shares, or about 1/3 of MARTA/ATU's current holdings.  Mayar Fund Ltd has not disclosed how many shares it currently holds (nor has Mayar Fund Ltd identified when it first became a Western Union shareholder).  The individual plaintiffs have likewise not disclosed the amount of their current holdings.

As detailed above (and in the Johnson Decl.), when no other derivative cases had been filed, Johnson & Weaver prepared and filed the initial complaint only after a diligent and extensive investigation.  Johnson Decl., ¶¶ 2-3.  Moreover, since filing the initial complaint, at every turn, Johnson & Weaver has demonstrated leadership and vigor in pursuing this action, by, among other things, immediately preparing and securing waivers of service for all but one defendant, engaging defense counsel in discussions concerning the litigation, and initiating and leading efforts to consolidate the Related Actions and further coordinate the litigation, both among plaintiffs' counsel and defense counsel.  Johnson Decl., ¶¶ 4-11, 13.[5]

> **4.      Johnson & Weaver Is Highly Capable And Qualified To Lead This Litigation**

Johnson & Weaver has achieved excellent results in several shareholder derivative lawsuits.  *See* Johnson & Weaver Firm Resume, attached as Exhibit C to the Johnson Decl.  In fact, because of its experience representing both shareholders and corporations, Johnson & Weaver stands apart from other plaintiffs-side securities firms in this arena.  Before forming his law firm, Mr. Johnson was a partner at Sheppard, Mullin, Richter & Hampton, LLP, a 600-lawyer international firm, where he represented publicly traded companies in defending representative actions.[6]  This prior experience

---

[5] Additionally, as reflected in the notice of related cases filed by Johnson & Weaver, within days of filing the *Lieblein* complaint, a derivative action asserting substantially similar allegations and claims has been filed in Colorado state court.   Johnson & Weaver has also reached out to counsel for plaintiff in the state action to discuss how the state and federal litigation might be coordinated to achieve a better and efficient result for the Company.  Johnson Decl., ¶ 6.

[6] In addition, Johnson & Weaver has assembled a team of lawyers who have extensive and valuable experience to bring to this matter.  Johnson Decl., ¶ 29, Exhibit C.  Nathan

carried over into the firm's current practice.  Johnson & Weaver has been retained not only by shareholders but also by publicly-traded companies to pursue former directors for breaches of fiduciary duty in a number of matters.

For example, Johnson & Weaver is currently being retained by the U.S. Chapter 7 Trustee of Powerwave Technologies, Inc., subject to approval by the United States Bankruptcy Court for the District of Delaware in *In re Powerwave Technologies, Inc.*, Case No. 13-10134 (MFW).  In February 2012, Johnson & Weaver filed a derivative action on behalf of Powerwave Technologies, Inc. in California, where the company is based.  When the company went into bankruptcy, based upon Johnson & Weaver's track record of success, the Trustee in Delaware agreed to retain Johnson & Weaver to continue pursuit of claims for breach of fiduciary duty against the defendants to benefit the estate in bankruptcy.  Johnson Decl., ¶ 20.

The Powerwave matter follows on the heels of a similar matter where the U.S. Chapter 7 Trustee of Artes Medical, Inc. in San Diego retained Johnson & Weaver to pursue claims for breach of fiduciary duty against Artes' former officers and directors. After years of hard fought litigation on behalf of the estate in bankruptcy, Johnson &

---

Hamler has over 13 years of experience representing both large (Fortune 500) and up-and-coming companies in complex business disputes in all facets of litigation in state and federal courts across the country.  Before joining Johnson & Weaver, Mr. Hamler was an attorney at Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, a full-service Am Law 100 firm with over 400 attorneys worldwide.  Additionally, Shawn Fields has extensive experience in all aspects of trial practice and discovery, as well as mediation and trial preparation in state and federal court.  Before joining Johnson & Weaver, Mr. Fields was an attorney at Latham & Watkins, where his practice focused on representing corporate clients in complex civil litigation.  Johnson Decl., ¶ 29, Exhibit C.  Additionally, Johnson & Weaver will be able to draw upon the significant experience and resources of its co-counsel, including Quinn, Connor, Weaver, Davies & Rouco LLP, as well as Morris, Manning & Martin, LLP.  *See id.*, ¶¶ 30-32.

Weaver negotiated a multi-million dollar settlement, which the bankruptcy court approved. In finding that "[t]here's no question in my mind that this settlement is in the best interest of this Estate," the Honorable Laura S. Taylor stated that, "I want to compliment Mr. Johnson, and I want to compliment on the successful recovery for the Estate. The creditors thank you, and I thank you." Johnson Decl., ¶ 20, Exhibit D.

Similarly, Johnson & Weaver's predecessor firm ("Johnson Bottini") served as co-lead counsel in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. 1:05-CV-041683 (Cal. Super. Ct. – Santa Clara Cnty., filed May 23, 2005), one of the highest profile cases in the country involving the backdating of stock options by the company's CEO and V.P. of Human Resources, both of whom were convicted of criminal securities violations by grand juries in related criminal actions pending in the Northern District of California. In that case, counsel for another plaintiff sought to settle a related federal derivative action for minor corporate governance changes and $525,000 in attorneys' fees. Importantly, this settlement would have recovered <u>no money for the company</u> and would have released certain of the officers, directors, and agents of the company responsible for a criminal backdating scheme.

Johnson Bottini successfully objected to this inadequate settlement. After almost three years of diligently prosecuting the case – including extensive motion practice, the review of approximately three million pages of documents, and the marshaling of evidence from related cases involving the conduct at Brocade – Johnson Bottini was retained to serve as co-counsel to Brocade's Special Litigation Committee ("SLC"). After presentations by Johnson Bottini, the SLC authorized the continued prosecution of claims against ten of Brocade's officers and directors on behalf of the shareholders. In

the end, the court approved the resolution that Johnson Bottini negotiated with the SLC as well as the eventual resolutions with Brocade's executives, resulting in a recovery of nearly $23 million for the company.  Johnson Decl., ¶ 21.

Further, International Real Estate PLC (a public company with shares listed on the London Stock Exchange) retained Johnson & Weaver to pursue claims for breach of fiduciary duty against former directors of a joint venture company.  *Int'l Real Estate PLC v. Oaktree Capital Mgmt., LLC et al.*, Case No. BC 324973 (Cal. Super. Ct. – Los Angeles Cnty., filed Aug. 25, 2005).   That case involved alleged damages of approximately $20 million and ultimately settled on confidential, but favorable, terms for Johnson & Weaver's client.  Johnson Decl., ¶ 22.  Greenland Corporation, a publicly traded company located in San Diego, also retained Johnson & Weaver to pursue claims for breach of fiduciary duty against several former officers and directors. *Greenland Corp. v. Bonar et al.*, Case No. GIC 842605 (Cal. Super. Ct. – San Diego Cnty., filed Feb. 10, 2005).   That case also settled on confidential terms, but with a significant payment to Johnson & Weaver's client.  Johnson Decl., ¶ 23.

Based on this track record and the firm's vigorousness in pursuing claims, several courts have recognized that Johnson & Weaver has the experience to handle complex derivative matters.   In fact, several courts have specifically acknowledged Johnson & Weaver's excellence in this arena by appointing Johnson & Weaver lead counsel in shareholder derivative actions over competing motions.  *See, e.g., In re OmniVision Technologies Derivative Litigation*, Lead Case No. 1-12-CV-216875 (Cal. Super. Ct. – Santa Clara Cnty., filed Jan. 17, 2012) (recognizing the "comprehensive and convincing" arguments of Johnson & Weaver in appointing the firm lead counsel

over competing firms) (Johnson Decl., ¶ 24); *In re Yahoo! Inc. Derivative Shareholder Litigation*, Lead Case No. 1-11-CV-202062 (Cal. Super. Ct. – Santa Clara Cnty., filed May 31, 2011) (appointing Johnson & Weaver co-lead counsel over objections from competing firms) (Johnson Decl., ¶ 25); *In re Oclaro, Inc. Derivative Litigation*, Lead Case No. C-11-3176 EMC (N.D. Cal., filed June 27, 2011) (appointing Johnson & Weaver lead counsel over competing motion, noting that "the Court is favorably impressed by [Johnson & Weaver's] presentation and knowledge") (Johnson Decl., ¶ 28); *Green Meadows Partners, LLP v. Tompkinson*, No. SACV 06-91 (C.D. Cal., filed January 27, 2006) (appointing Johnson lead counsel over competing lead counsel motions, in a case where seven derivative complaints had been filed, noting that the firm is "exceptionally qualified and experienced") (Johnson Decl., ¶ 26); *Dislevy v. Sacks*, No. ED CV 08-06788 (C.D. Cal., filed October 15, 2008) (appointing Johnson lead counsel over competing motions, noting the firm's "tremendous attributes" and the fact that it had, "in the Court's view, more diligently pursued this particular prosecution") (Johnson Decl., ¶ 27).

> **5.    Johnson & Weaver Has Attempted To Work Cooperatively With Other Counsel**

As detailed above, at every stage in this litigation, Johnson & Weaver has acted proactively and diligently in attempting to work cooperatively with defense counsel as well as plaintiffs' counsel.

Bernstein Litowitz has not demonstrated the same cooperation or leadership. Instead, essentially all that Bernstein Litowitz has done is review the complaint that Johnson & Weaver had already filed, and then file its own complaint a month later, alleging substantially similar facts and claims.  Of course, its other efforts include

demanding that Johnson & Weaver and all other counsel capitulate to a leadership structure that would appoint Bernstein Litowitz as sole lead counsel.  Johnson Decl., ¶¶ 7-8.

Nor, as noted, did Bernstein Litowitz make any effort before filing the *City of Cambridge Retirement System* action to discuss Johnson & Weaver's already-filed action or suggest how the first-filed *Lieblein* complaint might be amended.  Bernstein Litowitz' failure to make any attempt to work cooperatively with Johnson & Weaver also counsels against appointment of Bernstein Litowitz as lead plaintiffs' counsel (or the appointment of a Bernstein Litowitz client as lead plaintiff).  *Sexton v. Van Stolk*, 2008 U.S. Dist. LEXIS 32986, at *3-5 (W.D. Wash. Apr. 10, 2008) (appointing the first filed as lead over counsel who filed a second complaint without even bothering to contact plaintiff's counsel to informally discuss how the initially filed complaints may be amended or whether the firms could work together).

In *Sexton,* after the initial complaint was filed, another firm filed a second derivative complaint and, like here, sought to be appointed sole lead.  2008 U.S. Dist. LEXIS 32986, at *3-4.  The *Sexton* court criticized the firm for not even contacting the previously-filed derivative plaintiff's counsel before filing the second complaint.  As stated by the *Sexton* court:

> In addition, it is almost impossible to paint Mr. Baum's initiation of this second federal derivative action as an act taken in the best interests of the company.  Any deficiency in Mr. Sexton's complaint [the first filed derivative action] could have been remedied in a more cost-effective and productive manner by simply contacting plaintiff's counsel informally: by filing a competing copycat action, Mr. Baum initiated a shareholder battle and increased the costs of this litigation with no appreciable benefit to the company or the absent shareholders.

*Id.* at *4.   Bernstein Litowitz has shown essentially the same tactic here, providing yet another reason to deny any Bernstein Litowitz motion to be appointed as lead counsel. *See also Manual* §10.224 ("The attorneys' ability to … work cooperatively with opposing counsel and the court" is an important factor in selecting lead counsel.); *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *25-26 (same).

In sum, Johnson & Weaver, LLP has repeatedly demonstrated its commitment to vigorously pursuing this derivative action in the best interests of Western Union and working cooperatively with other counsel.

## V.   CONCLUSION

Appointing MARTA/ATU as lead plaintiff and Johnson & Weaver as lead plaintiffs' counsel will ensure the orderly prosecution of the derivative actions, prevent duplication of effort by counsel, and preserve the Court's resources.   MARTA/ATU's motion should therefore be granted in its entirety.

Dated: March 7, 2014

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
SHAWN E. FIELDS

 */s Frank J. Johnson*
Frank J. Johnson

110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
frankj@johnsonandweaver.com
shawnf@johnsonandweaver.com

*Attorneys for Plaintiffs MARTA/ATU Local 732 Employees Retirement Plan and Stanley Lieblein*

- 22 -

QUINN, CONNOR, WEAVER, DAVIES &
ROUCO LLP
NORMAN J. SLAWSKY
3516 Covington Highway
Decatur, GA 30032
Telephone: (404) 299-1211
Facsimile: (404) 299-1288
nslawsky@gmail.com

MORRIS, MANNING & MARTIN, LLP
EDMUND EMERSON III
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Telephone: (404) 504-7677
Facsimile: (404) 365-9532
eemerson@mmmlaw.com

*Attorneys for Plaintiffs MARTA/ATU Local 732
Employees Retirement Plan*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties that have appeared in the above-referenced case.

*/s Frank J. Johnson*
FRANK J. JOHNSON